Harold D. **CURRY** and Magdalene Curry, Plaintiffs-Appellants,

v.

**UNITED STATES** of America, Defendant-Appellee.

No. 84–2650.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1985.

Decided Oct. 14, 1985.

Robert A. Garelick, Indianapolis, Ind., for plaintiffs-appellants.

Martha Brissette, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before WOOD and EASTERBROOK, Circuit Judges, and DUMBAULD, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

These two hardworking taxpayers of modest combined income have gotten themselves into an unusual tax fix which we cannot remedy for them.

Harold Curry worked at a truck terminal, his wife Magdalene as a secretary; together they earned about $25,000 a year. In order to supplement their salaries they opened their own part-time business on the side. This business, known as HD Curry Truck and Tire Repair, offered emergency service to those suffering flat tires. A job ticket was prepared for each tire repaired. From time to time the Currys sent their customers invoices reflecting the total of the job tickets, and any amounts still owing from prior invoices. The Currys concede their bookkeeping, recordkeeping, and bank records were a bit deficient and disorganized.

Believing that they did not owe any taxes on their tire business, the Currys did not file personal income tax returns for a number of years. In 1979, however, they became concerned about their failure to file, took their records to their accountant, and asked him to prepare returns for the years missed, including 1975 and 1976, the years pertinent to this appeal.

After taking a look at the pile of disorganized job tickets and invoices, the accountant, a CPA, assigned the project to a staff accountant. The staff accountant arrived at a gross income figure using only the invoices and ignoring the job tickets. Because many of the invoices contained amounts due from prior invoices this approach resulted in double counting of many receipts and thus greatly overstated gross income.

When the Currys took a look at the 1975 and 1976 returns they immediately recognized that the profit figures did not reflect the true state of their flat tire business. They contacted their accountant who advised that since the returns were late the Currys should file them as prepared and later file amended returns to straighten it out.

For 1976 the original return reflected a $47,880 profit from their part-time tire business. Even after taking into account what had been withheld from their salaries, the return indicated that the Currys owed $20,442. The amended return, however, showed not only that the Currys did not owe any additional tax, but also that they were entitled to a refund from what had been withheld.

Similarly, for 1975 the original return showed a substantial flat tire business profit of $23,805. The amended return showed a substantial loss entitling the Currys to a refund of some of the amounts withheld from their salaries. Combined, the 1975 and 1976 amended returns showed that the Currys were entitled to a refund of approximately $8,400.

---

* The Honorable Edward Dumbauld, Senior District Judge from the Western District of Pennsylvania, is sitting by designation.

Upon receipt of the amended returns the IRS decided to perform an audit. But when the IRS arrived at the accountant's office to perform the audit the accountant could not locate the Currys' records, apparently having lost them during a recent office move. Without records to audit the IRS did not approve the refund nor issue a notice of deficiency for what was shown to be due on the original returns.[1]

■ The Currys wanted to contest the denial of the refund, but since the IRS had not issued a notice of deficiency they could not proceed in the Tax Court. *See* I.R.C. § 6521; Rule 13, Rules of Practice and Procedure of the United States Tax Court (May 1, 1979). They therefore filed for refund in the federal district court where notice of deficiency is not a jurisdictional prerequisite. The government filed a motion to dismiss for lack of subject matter jurisdiction arguing that the district court lacked jurisdiction under 28 U.S.C. § 1346(a)(1) because the Currys had not prepaid the approximately $60,000 in taxes shown to be owed on their original returns. Judge Dillin granted the government's motion to dismiss. We affirm.

28 U.S.C. § 1346(a)(1) provides that

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

In *Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), and later on rehearing, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), the Supreme Court decided that full payment of the assessed taxes is a prerequisite to filing a refund suit in a federal district court.

■ The Currys do not dispute their failure to prepay their assessed taxes, but ask this court to carve out a "hardship" exception to the *Flora* prepayment rule where, as here, the taxpayer cannot seek refund in the Tax Court but must proceed in a federal district court. Although it is true that in *Flora* the taxpayer had a choice of forums and the Currys did not, this is not a distinction which should make a difference. The *Flora* Court specifically rejected this distinction, stating that

[w]here the time to petition [the tax] court has expired, *or where for some other reason a suit in the District Court seems more desirable,* the requirement of full payment may in some instances work a hardship. But since any hardship would grow out of an opinion whose effect Congress in successive statutory revisions has made no attempt to alter, if any amelioration is required it is now a matter for Congress, not this Court.

357 U.S. at 75–76, 78 S.Ct. at 1086–87 (emphasis added).

*Flora* counsels that the Currys' hardship is a matter for legislative, not judicial remedy.[2]

---

1. A notice of deficiency was not issued because there was no deficiency within the meaning of 26 U.S.C. § 6211. A deficiency is the amount by which the amount owed exceeds the "amount of tax shown by the taxpayer upon his return." I.R.C. § 6211(a); *Laing v. United States,* 423 U.S. 161, 173, 96 S.Ct. 473, 480, 46 L.Ed.2d 416 (1976). Moreover, for the purpose of figuring deficiency, the "amount shown as the tax by the taxpayer upon his return" is the amount shown on the original return, not the amended return. *See Koch v. Alexander,* 561 F.2d 1115 (4th Cir. 1977) (Commissioner did not abuse his discretion in failing to take cognizance of amended income tax return showing zero tax liability,

filed by taxpayers who had first filed return showing liability of $20,558). Here there is no deficiency because the amount of tax shown by the Currys on their original return is not greater than the amount owed. *Id.* The Currys do not dispute that there was no "deficiency" within the meaning of section 6211(a) and that accordingly, they were not entitled to be issued a notice of deficiency.

2. Numerous courts since *Flora* have declined to carve out exceptions to the *Flora* full prepayment rule. *See, e.g., Ardalan v. United States,* 748 F.2d 1411 (10th Cir.1984); *Hutchinson v.*

Another reason we decline the invitation to carve out a "hardship" exception to the *Flora* rule is that it would endanger the "public purse" and disrupt the smooth functioning of the tax system, two tax policy considerations that led the *Flora* Court to adopt the prepayment rule in the first place:

> [T]he Government has a substantial interest in protecting the public purse, an interest which would be substantially impaired if a taxpayer could sue in a District Court without paying his tax in full.... It is quite true that the filing of an appeal to the Tax Court normally precludes the Government from requiring payment of the tax, but a decision in petitioner's favor could be expected to throw a great portion of the Tax Court litigation into the District Courts. Of course, the Government can collect the tax from a District Court suitor by exercising its power of distraint—if he does not split his cause of action—but we cannot believe that compelling resort to this extraordinary procedure is either wise or in accord with congressional intent. Our system of taxation is based upon voluntary assessment and payment, not upon distraint. A full-payment requirement will promote the smooth functioning of this system; a part-payment rule would work at cross-purposes with it.

362 U.S. at 175–76, 80 S.Ct. at 645–47 (footnotes omitted).

■ Even if we were to carve out an exception to the prepayment rule, the Currys would be barred from obtaining a refund by 26 U.S.C. § 6511. Subsection (a) of this section requires that a "claim for ... refund" be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later."

We first consider the timeliness of the Currys' "claim for refund" under subsection (a)'s two-year filing period limitation. The Currys filed their "claim for refund" in July, 1980 when they filed their amended returns claiming overpayment of income taxes, *see* 26 C.F.R. § 301.6402–3(a)(5) (an amended return shall constitute a claim for refund), and "paid" the withheld taxes they seek refunded on April 15, 1976 and April 15, 1977, *see* 26 U.S.C. § 6513(b)(1) (withheld taxes deemed paid on the 15th day of the fourth month following the close of the taxable year). Since July, 1980 is more than two years after both April, 1975 and April, 1976 the Currys were untimely in their filing with respect to subsection (a)'s two-year filing period.

Subsection (a)'s alternative three-year filing period does not help the Currys either, although arriving at this conclusion is somewhat more circuitous. Subsection (a)'s three-year filing period is measured from the date the "refund claim" is filed to the date the "return" is filed. In this case, the refund claims were filed in July, 1980, when the Currys filed their amended returns, and the returns were filed in March, 1980, when the Currys filed their original returns. Because July, 1980 is less than three years after March, 1980 it would appear that the Currys were timely under the three-year filing period. Being timely under the three-year filing period does not, however, help the Currys because subsection (b)(2)(A) limits the amount that someone relying on this three-year period can obtain to the portion of the tax that they paid in the three-year period preceding the filing of the refund claim. Because the Currys are deemed to have paid all the withheld taxes for which they seek refund on April 15, 1976 and April 15, 1977 and these dates are more than three years preceding the July, 1980 date on which they filed for refund, the Currys may not obtain any of the refund sought.

It is too bad that something cannot be done for the Currys. It is doubtful that there could have been enough flat tires in their area of Indiana in 1975 and 1976 for them to make over $70,000. No citizen should have to pay more taxes than he or she owes, but the Currys have only them-

*United States,* 677 F.2d 1322 (9th Cir.1982); *Geurkink Farms, Inc. v. United States,* 452 F.2d 643 (7th Cir.1971); *Kisting v. Sauber,* 325 F.2d 316 (7th Cir.1963).

selves and their accountant to blame for their predicament. The law, although unsympathetic to their problems, is not to blame. Possibly their congressman could help with a special bill, but any relief possibilities are beyond our reach.

The judgment of the district court must be affirmed. Each party shall bear its own costs.

AFFIRMED.[3]

---

3. The plaintiffs also allege that the district court has jurisdiction under 28 U.S.C. § 1340. This section states that district courts have original jurisdiction over civil actions involving Acts of Congress providing for internal revenue. While this section provides a general grant of jurisdiction, it does not provide the necessary waiver of sovereign immunity. That is only found, as it relates to the refund of internal revenue taxes, in 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422. The United States has not waived its sovereign immunity in this case because all of the taxes assessed in the original return have not been paid. *See Geurkink Farms, Inc. v. United States*, 452 F.2d 643, 644 (7th Cir.1971).